Chance McCraw
2727 N. Harwood Street
Dallas, TX 75201
E: cmccraw@jonesday.com
T: (214) 969-4563
F: (214) 969-5100

*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

| | |
|---|---|
| Anthony McCraw and Chance McCraw, | **Case No.: 25-cv-154-TUC-RM** |
| Plaintiffs, | |
| v. | **PLAINTIFFS' AMENDED COMPLAINT** |
| Argue Custom Homes, Inc.; AllHaus Texas, LLC; HomeWorks Property Management LLC d/b/a AllHaus; the Estate of Thomas S. Argue; Margaret Ann Argue; The Argue Family Trust dated September 6, 2001; AllHaus, LLC; and Dustin Cumming; | **DISTRICT JUDGE ROSEMARY MARQUEZ** |
| Defendants. | |

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Anthony and Chance McCraw (the "McCraws") file this Amended Complaint against Argue Custom Homes, Inc. ("Argue"), HomeWorks Property Management LLC d/b/a AllHaus ("AllHaus Arizona"), AllHaus Texas, LLC, ("AllHaus Texas"), AllHaus, LLC ("AllHaus Montana"), the estate of Thomas S. Argue ("Mr. Argue"), Margaret Ann Argue ("Mrs. Argue"), The Argue Family Trust dated September 6, 2001 ("Argue Family Trust"), and Dustin Cumming

1

("Mr. Cumming," and collectively, "Defendants"), and would respectfully show this Court the following:

## INTRODUCTION

1.     Anthony and Chance McCraw ("Plaintiffs") hired AllHaus Texas to remodel their homestead (the "Project"). AllHaus Texas never completed the Project. The Project faced numerous intentional delays caused by AllHaus Texas. For example, during one four month span, AllHaus Texas scheduled appliance install—a one day task. Plaintiffs repeatedly tried to encourage AllHaus Texas's completion of the Project to no avail. AllHaus Texas also seemed unable to perform the work required for the Project. For example, AllHaus Texas installed doors that could not close and other doors that could not stay closed.

2.     After twelve months of what AllHaus Texas repeatedly represented as a four to five month Project, AllHaus Texas walked off the job at the direction of Mr. Argue, Mr. Cumming, and AllHaus Arizona. AllHaus Texas repudiated the contract after repeatedly promising Plaintiffs it would complete the Project and inducing Plaintiffs to move back into their unfinished home.

3.     By repudiating the contract, AllHaus Texas thought it could extort a final payment from Plaintiffs without expending time and resources to complete the work. However, AllHaus Texas failed inspection and Plaintiffs' bank denied payment until AllHaus Texas completed the work. AllHaus Texas did not attempt to complete the work.

4.     The incomplete work includes items such as doors that could not close, uninstalled fixtures, cabinets that could not properly close, a washer and dryer was left sitting in the middle of the laundry room, and dozens of other items. AllHaus Texas also damaged parts of Plaintiffs home by pouring concrete leveler on the garage's epoxy flooring, splattering paint over the walls, cabinets, and flooring in one bathroom not under construction, and other items. AllHaus Texas also took several items from the home.

5.     Argue, Mr. Argue, Mr. Cumming, and AllHaus Arizona also interfered with the contract through fraudulent billing or directing AllHaus Texas to not complete the Project. AllHaus Arizona performed billing and payment collection for AllHaus Texas, as well as the other AllHaus

entities and Argue. AllHaus Arizona overcharged Plaintiffs for several items in violation of the contract between AllHaus Texas and Plaintiffs. AllHaus Arizona and AllHaus Texas have both separately acknowledged owing Plaintiffs money, but have refused to repay these amounts.

6.     Unbeknownst to Plaintiffs, Defendants' creditors had begun asking for payment or questioning why their projects sat idle. Defendants had commingled assets and used these to live a lavish lifestyle. Defendants faced growing debts and lawsuits began to pile up.

7.     Defendants sought to avoid payment to their creditors by shutting down their companies or exiting this world. Mr. Argue was found deceased in November 2024. Argue and AllHaus Texas shut down soon thereafter.

8.     Plaintiffs bring this suit to recover the cost of completing the Project and other damages caused by Defendants.

**PARTIES**

9.     Plaintiff Anthony McCraw is a resident and citizen of Texas.

10.    Plaintiff Chance McCraw is a resident and citizen of Texas.

11.    Argue Custom Homes, Inc. is an Arizona corporation with its registered office and principal place of business located at 8924 E. Pinnacle Peak Road, Ste G5-660, Scottsdale, Arizona 85255. Argue markets itself as "Arizona's Luxury Home Builder."

12.    AllHaus Arizona is an Arizona limited liability company with its registered office and principal place of business located 8924 E. Pinnacle Peak Road, Ste G5-660, Scottsdale, Arizona 85255. Mr. Argue was a member of AllHaus Arizona. As of February 24, 2025, Mr. Cumming is the sole member and manager of AllHaus Arizona.

13.    AllHaus Texas is a Texas limited liability corporation with its registered office and principal place of business located at 1403 Slocum St., Ste. 104, Dallas, TX 75207. Mr. Argue was the sole owner of AllHaus Texas.

14.    AllHaus Montana is a Montana limited liability company with its registered office and principal place of business located at 439 Grand Avenue #306, BigFork, MT 59911. Dustin Cumming is the Manager of AllHaus Montana. AllHaus Montana's business mailing address is

14666 N. 74th Street, Suite 100, Scottsdale, AZ 85260.

15.     Mr. Thomas S. Argue was an individual, resident, and citizen of the state of Arizona. He was the Owner and Manager of AllHaus Texas, AllHaus Arizona, AllHaus Montana, and Argue Custom Homes. He was also a Director, Shareholder, and President of Argue. He was a Trustee of The Argue Family Trust. His estate may be served with process through his personal representative, Mrs. Argue.

16.     Mrs. Margaret Ann Argue is an individual, resident, and citizen of the state of Arizona. Mrs. Argue is the surviving spouse of Mr. Argue and trustee of The Argue Family Trust Dated September 6, 2001.  Mrs. Argue also serves as the Treasurer, Secretary, Shareholder, and Director of Argue.  On information and belief, Mrs. Argue also served as Treasurer, Secretary, and Director of AllHaus Texas, AllHaus Arizona, and AllHaus Montana. Mrs. Argue is also the personal representative of the Estate of Thomas S. Argue.

17.     Dustin Cumming is an individual, resident, and citizen of the state of Montana. Mr. Cumming is Manager and Owner of AllHaus Montana and AllHaus Arizona. Mr. Cumming is also the son-in-law of Mr. and Mrs. Argue.

## JURISDICTION

18.     This Court has jurisdiction of this matter under 28 U.S.C. § 1332(a), (c)(2).

19.     Venue is proper pursuant to 28 U.S.C. § 1392(b)(3).

## FACTUAL BACKGROUND

**A. Relationship Between Defendants**

20.     Mr. and Mrs. Argue established Argue in 1997. Mr. Argue named himself as President, CEO, and Director. Mrs. Argue named herself as Secretary.

21.     In 2000, Mrs. Argue became the Treasurer and a Director of Argue.

22.     Mr. and Mrs. Argue established the Argue Family Trust in 2001. They both served as trustees.

23.     Mr. Argue established AllHaus Arizona in 2011. He named himself as manager. AllHaus Arizona was formed to provide home management services and repairs to homes built by

Argue. AllHaus Arizona manages the property after construction and performs remodeling services.

24.    Mr. Argue established AllHaus Texas in October 2020. He sent Jim Grant from AllHaus Arizona to Dallas, Texas to serve as President and open this new branch of AllHaus Arizona. AllHaus Texas marketed itself as the same quality of workmanship as Argue.

25.    AllHaus Texas never had more than two employees. All management and business functions were executed from the main corporate office at AllHaus Arizona. AllHaus Arizona also received all payments for any work performed by AllHaus Texas.

26.    In July 2024, Mr. Cumming, with the assistance of Mr. Argue, Argue, AllHaus Texas, and AllHaus Arizona, established AllHaus Montana. This branch of AllHaus Arizona has a business mailing address in an office of AllHaus Arizona in Scottsdale, Arizona. AllHaus Montana maintains its principal address at a UPS P.O. Box in Bigfork, Montana.

27.    In October 2024, one month prior to his death, Mr. Argue added Mr. Cumming as a member and manager of AllHaus Arizona. Mr. Argue also named himself as a member.

28.    In February 2025, Mr. Cumming removed Mr. Argue as a member and manager of AllHaus Arizona, leaving only himself as member and manager. Mr. Cumming also filed updated articles of incorporation for AllHaus Montana, presumably to remove Mr. Argue.

**B. Contract with AllHaus Texas**

29.    This dispute arises from AllHaus Texas's repudiation of its contract with Plaintiffs, AllHaus Texas's breaches of that contract, and the Defendants' actions related to that transaction.

30.    Plaintiffs and AllHaus Texas entered into an agreement dated December 8, 2022, whereby AllHaus Texas agreed to complete the scope of work as set out in the designs. Jim Grant, then President of AllHaus Texas, procured the contract for AllHaus Texas.

31.    AllHaus Texas induced Plaintiffs to contract with it based on its representation that the scope of work would cost $279,414.61. The scope of work included remodeling a portion of the Property. AllHaus Texas did not complete these items.

32.    AllHaus Texas knew at the time of contracting this number was false. It later represented the actual cost would be $439,145.30.

33.     AllHaus Texas later told Plaintiffs that it represented the scope of work would only cost $279,414.61 because it needed to get Plaintiffs under contract before revealing the real cost.

34.     Plaintiffs had made non-refundable deposits and paid for various construction items by the time AllHaus Texas revealed the true cost of the Project.

35.     AllHaus Texas started construction on the Project on October 30, 2023. The parties anticipated Project completion by March 30, 2024, based on AllHaus Texas's repeated representations before and after contracting that the Project would take four to five months.

36.     Throughout the Project, AllHaus Arizona submitted invoices on behalf of AllHaus Texas for payment to Plaintiffs. Mr. Argue and Mr. Cumming were on these invoice submissions. These invoices often contained inaccuracies.

37.     On information and belief, AllHaus Arizona also performs the billing functions for Argue and AllHaus Montana or they are one and the same.

38.     On information and belief, AllHaus Arizona maintained the account for AllHaus Texas, Argue, and AllHaus Montana. AllHaus Arizona did not segregate these accounts by business entity.  AllHaus Arizona did not separate the accounts by Project as required for construction trust fund accounts.

39.     The invoices incorrectly charged Plaintiffs for several items.

40.     Under the contract, AllHaus Texas received a 25% premium of the cost of the Project as its management and profits. However, AllHaus Texas, via AllHaus Arizona, overcharged for these amounts. AllHaus Texas charged 19% for management, added this amount to the cost of the Project, and then added an additional 6% to calculate its profit. This resulted in an overpayment by Plaintiffs and breached the parties' contract. AllHaus Texas breached the contract by overcharging for this.

41.     AllHaus Texas, via AllHaus Arizona, also charged Plaintiffs for insurance. The contract does not permit AllHaus Texas to charge Plaintiffs for this amount. On information and belief, AllHaus Texas never had insurance covering the Project. AllHaus Texas breached the contract by requiring Plaintiffs to pay for insurance.

42. AllHaus Arizona and AllHaus Texas represented their calculations of amounts owed were true and correct. Mr. Argue and Mr. Cumming also supported these representations. These false representations damaged Plaintiffs.

43. The Project did not progress smoothly because AllHaus Texas delayed the Project. Below is an example of AllHaus Texas's delays. This image shows AllHaus Texas did not schedule anything but appliance install for four months of the Project. Appliance install could have been completed in a day.



44. Prior to this delay, Jim Grant fired the Project Manager of the Project and took over management of the Project. Jim Grant then hired a new Project Manager, Larry McBrearty to complete the Project.

45. AllHaus Texas continued to delay the Project. In September 2024, Jim Grant left AllHaus Texas. This meant that no one from AllHaus Texas that started on the Project was still on the Project. Plaintiffs spent countless hours trying to educate the new project manager about the Project.

46. After repeated delays caused by AllHaus Texas, it induced Plaintiffs to move back into their home in early October 2024. AllHaus Texas promised to complete the items on the parties'

punch list. AllHaus Texas also promised to clean the home prior to Plaintiffs' move in. This was a cost included within the scope of the Project. AllHaus Texas never returned to the home, nor did it clean the home prior to Plaintiffs' move in. Plaintiffs suffered damages as a result of AllHaus Texas's actions.

47.     On October 17, 2024, the date the parties were to meet at the Project to discuss completion of the scope of work, AllHaus Texas emailed Plaintiffs repudiating the contract and made a demand for some unknown amount of money. Prior to this, AllHaus Texas had not asked Plaintiffs for any payment because no payment was due until Project completion.

48.     AllHaus Texas repudiated the contract at the instruction of Mr. Argue, Mr. Cumming, Argue, and AllHaus Arizona. By repudiating the contract, these Defendants thought they could extort payment from Plaintiffs to pay their other creditors who had begun demanding payment. *See* § F. However, Plaintiffs did not owe any money to AllHaus Texas. All work performed had been prepaid. Plaintiffs had in fact over paid for work not yet performed.

49.     In all of Mr. Argue's interactions with Plaintiffs, he acted as President of Argue Custom Homes. Mr. Argue solely used an email address from Argue.

50.     In all of Mr. Cumming's interactions with Plaintiffs, he acted as the owner or manager of AllHaus Arizona. Mr. Cumming solely used an email address from AllHaus Arizona.

51.     On the same date that AllHaus Texas repudiated the contract, AllHaus Arizona emailed Plaintiffs regarding a refund they are owed. One of AllHaus Texas's vendors found that AllHaus Texas overcharged Plaintiffs for several appliances and fixtures. AllHaus Texas has acknowledged owing this refund to Plaintiffs in addition to the management and profit overcharge associated with these items. But Defendants have refused to refund Plaintiffs this amount.

52.     AllHaus Arizona, on behalf of AllHaus Texas, and at the insistence of Mr. Cumming and Mr. Argue, submitted a final invoice for the Project on October 18, 2024. The invoice charged incorrect amounts, charged for items already paid for, and had other inaccuracies. AllHaus Arizona knew it was not an accurate invoice and that Plaintiffs did not owe AllHaus Texas any money.

53.     In order to receive payment, AllHaus Texas had to pass inspection. Plaintiffs' bank

denied the final invoice because AllHaus Texas had not performed the work required for payment. AllHaus Texas never sought payment again nor tried to finish the Project. Unbeknownst to Plaintiffs, AllHaus Texas had begun to shut down.

**C.  Plaintiffs' First RCLA and DTPA Notice to AllHaus Texas**

54.     Plaintiffs sent a demand letter to AllHaus Texas, Mr. Argue, and Argue on October 21, 2024. AllHaus Texas, AllHaus Arizona, Mr. Cumming, Mr. Argue, and Argue responded by demanding that Plaintiffs submit a notice through the Residential Construction Liability Act ("RCLA") process. Tex. Prop. Code § 27.004. The RCLA does not apply to a contractor that walks off the job or repudiates the contract or when a trustee fails to maintain a proper trust account, which Defendants AllHaus Texas, AllHaus Arizona, Mr. Cumming, Mr. Argue, and Argue violated. Tex. Prop. Code § 27.002(d)(2–3).

55.     However,  to move the process forward Plaintiffs obliged Defendants and sent their first RCLA notice letter on November 4, 2024. Ex. A. In that letter, Plaintiffs included items subject to the RCLA and those not subject to the RCLA to try and reach an agreement on finishing the Project. Plaintiffs listed dozens of items and included 314 documents evidencing the damages and incomplete items. These documents included invoices for necessary repairs, such as for a gas exhaust malfunction on the hot water heater, photos, and videos.

56.     Plaintiffs also provided AllHaus Texas notice of its Deceptive Trade Practices Act claims. Tex. Bus. & Com. Code Ann. § 17.505. AllHaus Texas never responded to these claims.

57.     AllHaus Texas never participated in the RCLA process. The RCLA process is intended for parties to negotiate a settlement without the need for litigation. The RCLA provides a contractor 35 days to inspect a project up to 3 times. AllHaus Texas did not inspect the Property even once to provide a reasonable offer to Plaintiffs. However, AllHaus Texas feigned an interest in inspecting the Property to delay Plaintiffs recovery for damages it caused. AllHaus Texas requested to inspect the Property during the week of December 2 through December 9. Plaintiffs timely notified AllHaus Texas that it could inspect the Property on December 5, 2024. The day before the inspection date, AllHaus Texas canceled the inspection.

58.    AllHaus Texas sent Plaintiffs an offer dated December 31, 2024. Ex. B. In the offer, AllHaus Texas offered to make certain repairs "where defect is identified." The offer failed to comply with the RCLA. *See* Tex. Prop. Code § 27.004(b) ("The offer . . . **shall describe in reasonable detail** the kind of repairs which will be made." (emphasis added)). Plaintiffs attempted to contact AllHaus Texas to understand the meaning of this phrase to understand what AllHaus Texas intended on repairing and reach a resolution to this matter. AllHaus Texas did not return any of Plaintiffs phone calls or emails. Plaintiffs had provided a long list of detailed items needing repaired or completed, along with photos of each. AllHaus Texas could have identified items to complete or repair based upon this list, the parties' punch list, its photos, and Plaintiffss' photos.

59.    AllHaus Texas again acknowledged that it owed Plaintiffs a $4,260.88 refund.

60.    Plaintiffs timely rejected AllHaus Texas's offer. Ex. C. Plaintiffs then brought this suit after AllHaus Texas declined mediation and arbitration.

**D.  Plaintiffs' Second RCLA Notice to AllHaus Texas**

61.    On December 20, 2024, Plaintiffs sent AllHaus Texas a second RCLA notice letter that included additional items for repair based on an independent third-party inspection. Ex. D.

62.    AllHaus Texas never responded to this second RCLA notice letter. By failing to respond, AllHaus Texas failed to provide a reasonable offer as a matter of law.

**E.  AllHaus Texas Shuts Down**

63.    Despite sending Plaintiffs an offer dated December 31, 2024, where Plaintiffs had until February 1, 2025 to accept or reject the offer, AllHaus Texas closed for business. AllHaus Texas's offer included a stipulation of 60 days to complete the work, meaning it had until April 2, 2025 to complete any work agreed to by Plaintiffs. AllHaus Texas knowingly submitted an RCLA offer that it could not perform. AllHaus Texas's offer contained material misrepresentations that caused Plaintiffs to rely on these representations to their detriment.

64.    On information and belief, AllHaus Texas closed its physical place of business by February 1, 2025. AllHaus Texas then proceeded to shut down its website and remove its Google Business Profile.

65.     On information and belief, AllHaus Texas began shutting down in November 2024. AllHaus Texas then liquidated its assets and transferred these assets to Mr. Argue, Mrs. Argue, Mr. Cumming, AllHaus Arizona, AllHaus Montana, Argue, and the Argue Family Trust. AllHaus Texas has no remaining assets.

### F. Defendants' Scheme

66.     Mr. and Mrs. Argue funneled assets from Argue, AllHaus Arizona, AllHaus Texas, and AllHaus Montana to the Argue Family Trust and themselves. As time went on, they did not pay contractors for various projects and kept the payments for themselves. They also commingled their assets and funds with Argue, AllHaus Arizona, AllHaus Texas, and AllHaus Montana to purchase lavish items, such as luxury homes and an interest in a private jet.

67.     For example, in 2004 Argue bought a lot with a $367,488 note.

68.     Months later, Argue transferred this same property to Mr. and Mrs. Argue. The next day, Mr. and Mrs. Argue transferred the same lot back to Argue. Nearly two years later, Argue transferred the property to the Argue Family Trust. The Argue Family Trust did not pay Argue fair market value for the home. The home sold for $8.2 million in March 2008.

69.     In another example, Mr. and Mrs. Argue used Argue to purchase a home for $2,720,000 in November 2014.

70.     Argue then transferred the home to Mr. and Mrs. Argue in June 2021. Mr. and Mrs. Argue did not pay Argue fair market value for the home. Mr. and Mrs. Argue promptly listed the home for sale and sold it for $7.5 million.

71.     By funneling assets to the Argue Family Trust, Mr. and Mrs. Argue bought a $7 million home in Corona del Mar, California in March 2023. On information and belief, Mr. and Mrs. Argue used the proceeds from the $7.5 million sale to purchase this home.

72.     On information and belief, Mr. and Mrs. Argue conducted similar transactions with the assets from AllHaus Arizona, AllHaus Montana, and AllHaus Texas.

73.     Over the next year, various customers, contractors, and subcontractors began asking for payment or where the funds had gone. Mr. and Mrs. Argue could not satisfy these creditors

because they had commingled their assets and used payments from customers to live their lavish lifestyle.

74.     One year later, the Argue Family Trust listed the Corona del Mar home for sale. By July 2024, Mr. and Mrs. Argue began frantically lowering the price of the Corona del Mar home to use those proceeds to pay their creditors.[1] Unable to sell the home and with the growing list of creditors, Mr. Argue was found dead at his Corona del Mar home.

75.     Defendants continue to withhold money paid by Plaintiffs. To complete the Project, Plaintiffs were required to make deposits prior to and during construction of the Project. Defendants withheld an amount to credit towards a final bill once AllHaus Texas completed the Project. AllHaus Texas did not complete the Project. Defendants refuse to refund this money. Defendants also continue to withhold the refund and overpayment amounts.

76.     AllHaus Texas's delays on the Project caused additional damages to Plaintiffs. Plaintiffs moved out of their home during construction. They had to maintain a second home for months longer than contemplated when the parties contracted. This breached the parties' agreement. Plaintiffs have also suffered emotional distress and mental anguish from loss of sleep, stress, anxiety, denial of the quiet enjoyment of their home, impacts to credit scores, delay of starting a family, and other harms.

77.     Plaintiffs also paid additional fees to their designers because of AllHaus Texas's delays. Plaintiffs hired designers to design the remodel of their home. Their designers assisted AllHaus Texas in performing the construction per the designs. Due to AllHaus Texas's delays, Plaintiffs' designers spent more time than necessary on the Project. Plaintiffs suffered damages as a result.

78.     Since Plaintiffs moved back into their home, they have noticed several items have gone missing from their home. AllHaus Texas has refused to replace these items.

79.     Plaintiffs have also noticed several items that were damaged as a result of AllHaus

---

[1] This is around the same time that Jim Grant left AllHaus Texas. On information and belief, he knew about the financial difficulties facing Defendants, but he did not share this information with Plaintiffs.

Texas's actions. AllHaus Texas refused to repair these damaged items.

## COUNT 1

## BREACH OF CONTRACT - REPUDIATION (ALLHAUS TEXAS)

80.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

81.    A contract exists and is signed by both parties.

82.    Plaintiffs performed all requirements according to the contract.

83.    AllHaus Texas breached the signed contract by repudiating the contract.

84.    AllHaus Texas's breach has caused Plaintiffs to suffer substantial damages, which were foreseeable by Defendant.

85.    Plaintiffs are entitled to damages and reasonable attorneys' fees as allowed by Texas Civil Practice & Remedies Code § 38.001 *et seq.* and the contract.

## COUNT 2

## BREACH OF CONTRACT – RETENTION OF MONEYS (ALLHAUS TEXAS)

86.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

87.    A contract exists and is signed by both parties.

88.    Plaintiffs performed all requirements according to the contract.

89.    AllHaus Texas breached the signed contract by retaining amounts owed to Plaintiffs.

90.    AllHaus Texas's breach has caused Plaintiffs to suffer substantial damages, which were foreseeable by Defendant.

91.    Plaintiffs are entitled to damages and reasonable attorneys' fees as allowed by Texas Civil Practice & Remedies Code § 38.001 *et seq.* and the contract.

## COUNT 3

## BREACH OF CONTRACT – OVERCHARGES (ALLHAUS TEXAS)

92.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

93.     A contract exists and is signed by both parties.

94.     Plaintiffs performed all requirements according to the contract.

95.     AllHaus Texas breached the signed contract overcharging Plaintiffs.

96.     AllHaus Texas's breach has caused Plaintiffs to suffer substantial damages, which were foreseeable by Defendant.

97.     Plaintiffs are entitled to damages and reasonable attorneys' fees as allowed by Texas Civil Practice & Remedies Code § 38.001 *et seq.* and the contract.

## COUNT 4

### BREACH OF CONTRACT – TIME IS OF THE ESSENCE (ALLHAUS TEXAS)

98.     Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

99.     A contract exists and is signed by both parties.

100.    Plaintiffs performed all requirements according to the contract.

101.    AllHaus Texas breached the signed contract by breaching the Time is of the Essence clause of the contract through delays of the Project.

102.    AllHaus Texas's breach has caused Plaintiffs to suffer substantial damages, which were foreseeable by Defendant.

103.    Plaintiffs are entitled to damages and reasonable attorneys' fees as allowed by Texas Civil Practice & Remedies Code § 38.001 *et seq.* and the contract.

## COUNT 5

### BREACH OF CONTRACT – MEDIATION AND ARBITRATION (ALLHAUS TEXAS)

104.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

105.    A contract exists and is signed by both parties.

106.    Plaintiffs performed all requirements according to the contract.

107.    AllHaus Texas breached the signed contract by refusing to mediate or arbitrate and

1   diverting all assets to the other Defendants to make mediation and arbitration impossible.

2        108.   AllHaus Texas's breach has caused Plaintiffs to suffer substantial damages, which

3   were foreseeable by Defendant.

4        109.   Plaintiffs are entitled to damages reasonable attorneys' fees as allowed by Texas

5   Civil Practice & Remedies Code § 38.001 *et seq.* and the contract.

6   **COUNT 6**

7   **DTPA (ALLHAUS TEXAS)**

8        110.   Plaintiffs incorporate by reference all allegations in the above as if fully set forth

9   therein.

10        111.   Plaintiffs are consumers.

11        112.   AllHaus Texas made numerous material misrepresentations, as detailed above, in

12   violation of the Texas Deceptive Trade Practices-Consumer Protection Act (the "DTPA"). *See* Tex.

13   Bus. & Com. Code Ann. § 17.46(b)(7), (9), (12), (13), (22), (24).

14       a.   AllHaus Texas violated § 17.46(b)(7) by representing that goods or services

15          would be of a particular standard, quality, or grade when they were of

16          another;

17       b.   AllHaus Texas violated § 17.46(b)(9) by advertising goods or services with

18          an intent not to sell them as advertised;

19       c.   AllHaus Texas violated § 17.46(b)(12) by representing that an agreement

20          confers or involves rights, remedies, or obligations which it did not have or

21          involve;

22       d.   AllHaus Texas violated § 17.46(b)(13) by knowingly making false or

23          misleading statements of fact concerning the need for parts, replacement, or

24          repair service;

25       e.   AllHaus Texas violated § 17.46(b)(22) by representing that work or services

26          have been performed on, or parts replaced in, goods when the work or

27          services were not performed or the parts replaced;

28

f.      AllHaus Texas violated § 17.46(b)(24) by failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

113.    AllHaus Texas was provided notice in writing of the claims made in this Amended Complaint more than sixty days before this suit was filed in the manner required by Tex. Bus. & Com. Code § 17.505.

114.    AllHaus Texas knew or should have known its representations were false or acted in reckless disregard for the truth or falsity of its representations.

115.    AllHaus Texas's actions were done maliciously and in willful, wanton and reckless disregard for the rights of Plaintiffs.

116.    AllHaus Texas's actions violate Texas Business and Commerce Code § 17.41.

117.    AllHaus Texas's conduct is the producing cause of damages to Plaintiffs. Plaintiffs' damages include statutory damages of at least $100.00 per violation, actual/economic damages, emotional and/or mental anguish damages, exemplary/punitive damages, treble damages, and Plaintiffs' attorneys' fees and costs.

## <u>COUNT 7</u>

**COMMON LAW FRAUD/FRAUD IN THE INDUCEMENT (ALLHAUS TEXAS, ALLHAUS ARIZONA, ARGUE, MR. ARGUE, MR. CUMMING)**

118.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

119.    Defendants made representations to Plaintiffs.

120.    The representations were material.

121.    The representations were false.

122.    Defendants were aware the representations were false or made the representations recklessly and without knowledge of their truthfulness.

123.  Defendants made these representations with the intent that Plaintiffs act on them.

124.  AllHaus Texas made some representations with the intent of inducing Plaintiffs to contract with it.

125.  Plaintiffs acted in reliance on the representations.

126.  The representations caused injury to Plaintiffs.

## COUNT 9

## NEGLIGENT MISREPRESENTATION (ALLHAUS ARIZONA, ARGUE, MR. ARGUE, MR. CUMMING)

127.  Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

128.  AllHaus Arizona, Argue, Mr. Argue, and Mr. Cumming made representations in the course of its business and/or in the pursuit of a transaction with a personal financial interest.

129.  AllHaus Arizona, Argue, Mr. Argue, and Mr. Cumming provided false information for the guidance of Plaintiffs in its business.

130.  AllHaus Arizona, Argue, Mr. Argue, and Mr. Cumming did not exercise reasonable care or competence in obtaining or communicating the information.

131.  Plaintiffs relied on these representations.

132.  Plaintiffs suffered damages as a result.

## COUNT 10

## BREACH OF IMPLIED WARRANTY, TEX. BUS. & COMM. CODE § 17.50 (ALLHAUS TEXAS)

133.  Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

134.  AllHaus Texas has breached the implied warranty of good and workmanlike performance. In connection with the Project, the implied warranty that the work would be performed in a good and workmanlike manner arose as a matter of law.

135.  AllHaus Texas failed to comply with and breached this warranty. Such breach

caused damages to Plaintiffs.

136.    Plaintiffs suffered damages as a result.

## COUNT 11

## BREACH OF EXPRESS WARRANTY, TEX. BUS. & COMM. CODE § 17.50

## (ALLHAUS TEXAS)

137.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

138.    Alternatively, AllHaus has breached express warranties regarding the Project. Such breaches caused damages to Plaintiffs.

139.    AllHaus breached express warranties regarding the standards of construction, workmanship, plumbing, electrical, and failure to comply with applicable codes and standards.

140.    Plaintiffs suffered damages as a result.

## COUNT 12

## VIOLATIONS OF THE TEXAS CONSTRUCTION TRUST FUND ACT

## (ALLHAUS ARIZONA AND ALLHAUS TEXAS)

141.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

142.    Defendants have violated the Texas Construction Trust Fund Act ("TCTFA") found in Chapter 162 of the Texas Property Code.

143.    Defendants received construction payments under the parties' contract for the Project.

144.    Defendants had control or direction of trust funds as trustees. Plaintiffs are beneficiaries of the trust funds.

145.    Defendants misapplied trust funds by intentionally or knowingly or with intent to defraud, directly or indirectly retained, used, disbursed, or otherwise diverted trust funds.

146.    Defendants acted with intent to defraud when Defendants retained, used, disbursed, or diverted trust funds with the intent to deprive the beneficiaries of the trust funds; or retained,

used, disbursed, or diverted trust funds and failed to establish or maintain a construction account as required by Section 162.006 or failed to establish or maintain an account record for the construction account as required by Section 162.007 of the Trust Fund Act.

147. Defendant was also required, among other things, to deposit the trust funds into a construction account. The construction account must be in a financial institution, and the periodic statements from the financial institution must refer to the account as a "construction account." Only trust funds may be maintained in this account. Defendant was also required to maintain an account record for the construction account that provides:

a. information relating to the source and amount of the funds in the account;

b. the date the funds were deposited;

c. the date and amount of each disbursement;

d. the person to whom the funds were disbursed; and,

e. the current balance of the account.

148. Defendants have failed to maintain a construction account as required under the Trust Fund Act, or failed to maintain the account records for a construction account as required under the Trust Fund Act.

149. Defendants' conduct has proximately caused damages to Plaintiffs.

## <u>COUNT 13</u>

## TORTIOUS INTERFERENCE WITH CONTRACT (ARGUE, ALLHAUS ARIZONA, MR. ARGUE, AND MR. CUMMING)

150. Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

151. Plaintiffs had a contract with AllHaus Texas.

152. Argue, AllHaus Arizona, Mr. Cumming, and/or Mr. Argue acted willfully and intentionally to interfere with this contract.

153. Argue, AllHaus Arizona, Mr. Cumming, and/or Mr. Argue's acts caused injury to Plaintiffs.

154.    Plaintiffs have suffered damages as a result.  Defendants are jointly and severally liable to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court. Defendants are also liable for exemplary and punitive damages.

## COUNT 14

### UNJUST ENRICHMENT (DEFENDANTS)

155.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

156.    Plaintiffs conferred a benefit upon Defendants by paying AllHaus Texas an amount that exceeded the agreed upon amount in the agreement and for services not provided.

157.    Defendants' benefit is at Plaintiffs' expense as Defendants still owe Plaintiffs the excess amount, thereby Defendants have been unjustly enriched.

158.    Plaintiffs have suffered damages as a result of Defendants' conduct.

## COUNT 15

### ALTER EGO (DEFENDANTS)

159.    Plaintiffs incorporate by reference all allegations in the above as if fully set forth therein.

160.    At all relevant times, Mr. Argue, Mrs. Argue, Mr. Cumming, the Argue Trust, Argue, AllHaus Arizona, AllHaus Montana, and AllHaus Texas shared such an interest, ownership, and control such that Mr. Argue, Mrs. Argue, Mr. Cumming, the Argue Trust, Argue, AllHaus Arizona, AllHaus Montana, and AllHaus Texas should be deemed one and the same.

161.    At all relevant times, Mr. Argue, Mrs. Argue, Mr. Cumming, the Argue Trust, Argue, AllHaus Arizona, AllHaus Montana, and AllHaus Texas commingled funds that any individuality and separateness between them ceased to exist.

162.    Mr. and Mrs. Argue have used the assets of the Argue Trust, Argue, AllHaus Arizona, and AllHaus Texas for personal use and for personal and marital community expenses, which include luxury homes, a private jet, and other luxury items.

163.    Mr. and Mrs. Argue used the assets of Argue, AllHaus Arizona, AllHaus Texas, and

the Argue Trust to purchase luxury homes in Arizona and California. On information and belief, Mr. and Mrs. Argue used the assets of Argue, AllHaus Arizona, AllHaus Texas, and the Argue Trust to purchase other luxury items.

164. Mr. Cumming has used the assets of AllHaus Arizona and AllHaus Texas to establish AllHaus Montana. On information and belief, Mr. Cumming has also used the assets of AllHaus Arizona, AllHaus Texas, and AllHaus Montana for personal use and for personal and marital community expenses to purchase luxury items.

165. Argue, AllHaus Arizona, AllHaus Texas, and AllHaus Montana did not follow compliance requirements or corporate formalities.

166. Argue, AllHaus Arizona, AllHaus Texas, and AllHaus Montana did not create or maintain corporate records.

167. The Argue Trust did not follow compliance requirements or corporate formalities.

168. The Argue Trust did not create or maintain trust records.

169. Adhering to the fiction of a separate corporate existence and treating Argue, AllHaus Arizona, AllHaus Montana, and AllHaus Texas other than as alter egos of the Argue Trust, Mr. Argue, and Mrs. Argue would permit fraud and abuse of the corporate privilege and work an injustice.

170. As such, Mr. Argue, Mrs. Argue, and the Argue Trust should be deemed Argue's, AllHaus Arizona's, AllHaus Montana's, and AllHaus Texas's alter ego and the corporate fiction between them should be disregarded for all purposes.

171. Adhering to the fiction of a separate corporate existence and treating the Argue Trust other than as alter egos of Mr. Argue, and Mrs. Argue would permit fraud and abuse of the corporate privilege and work an injustice.

172. As such, Mr. Argue and Mrs. Argue should be deemed the Argue Trust's alter ego and the trust fiction between them should be disregarded for all purposes.

173. Adhering to the fiction of a separate corporate existence and treating AllHaus Arizona and AllHaus Montana other than as alter egos of Mr. Cumming would permit fraud and

abuse of the corporate privilege and work an injustice.

174.    As such, Mr. Cumming should be deemed AllHaus Arizona's and AllHaus Montana's alter ego and the corporate fiction between them should be disregarded for all purposes.

175.    Plaintiffs have suffered damages as a result of Defendants' conduct.

## JURY DEMAND

176.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and in favor of Plaintiffs in this lawsuit for the following relief:

(1)    Awarding Plaintiffs actual damages;

(2)    Awarding Plaintiffs statutory damages;

(3)    Awarding Plaintiffs punitive damages;

(4)    Awarding Plaintiffs treble damages;

(5)    Awarding Plaintiffs all reasonable and necessary attorneys' fees, costs, and expenses incurred by Plaintiffs;

(6)    Awarding Plaintiffs pre-judgment interest and post-judgment interest; and

(7)    Awarding Plaintiffs all other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED on this 7 day of April 2025.

*/s/ Chance B. McCraw*
Chance B. McCraw
Texas Bar No. 24125807
cmccraw@jonesday.com
2727 North Harwood Street
Dallas TX 75201-1515
Telephone: (214) 220-3939
Fax: (214) 969-5100

- 22 -

1    Counsel for Plaintiffs

2

3                    **CERTIFICATE OF SERVICE**

4         I hereby certify that on April 7, 2025, I electronically filed the foregoing document

5    with the Clerk of the Court using the ECF system. Notice of such filing will be sent to all

6    attorneys of record in this matter. Since none of the attorneys of record are non-ECF

7    participants, hard copies of the foregoing have not been provided via personal delivery or

8    by postal mail.

9

10                                        By: */s/ Chance B. McCraw*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28