David N. McDevitt (030761)
**LOVEIN | RIBMAN, P.C.**
1225 Main Street, Suite 200
Grapevine, Texas 76051
(817) 442-5106 (Telephone)
(817) 442-5108 (Facsimile)
dmcdevitt@loveinribman.com
**ATTORNEY FOR PLAINTIFFS**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Chance McCraw, et al., ) | Case No. 4:25-cv-00154-TUC-RM |
| ) | |
| Plaintiffs, ) | **PLAINTIFFS' RESPONSE TO** |
| ) | **DEFENDANT ALLHAUS, LLC'S** |
| vs. ) | **MOTION FOR ENTRY OF PARTIAL** |
| ) | **JUDGMENT AND LEAVE TO FILE** |
| Argue Custom Homes Incorporated, et al., ) | **APPLICATION FOR ATTORNEYS'** |
| ) | **FEES** |
| Defendants. ) | |
| ) | |
| ) | Assigned to the Hon. Rosemary Marquez |
| ) | |

COME NOW, Plaintiffs Chance McCraw and Anthony McCraw ("Plaintiffs") and respond to the *Motion for Entry of Partial Judgment and Leave to File Application for Attorneys' Fees* (Doc. 72) (the "Motion"), filed by Defendant AllHaus, LLC ("AHM")[1], and respectfully show unto the Court as follows:

**I.  INTRODUCTION**

Entering partial judgment under Rule 54(b) should not occur in the ordinary case. No injustice would occur by requiring AHM to wait for final judgment. The only purpose would be to seek attorney's fees, which were paid by Argue, against whom Plaintiffs' claims are stayed. In any event, the Court should decline AHM's astronomical fee request.

---

[1] Defendant AllHaus, LLC is referred to as "AllHaus Montana" in the Court's December 2, 2025 order (Doc. 71) and will be referred to as "AHM" herein.

1

This litigation began in Texas state court in February 2025.[2] Originally filed against (1) Argue Custom Homes, Inc. ("Argue"), (2) AllHaus Texas, LLC ("AllHaus Texas"), (3) HomeWorks Property Management LLC d/b/a AllHaus ("AllHaus Arizona"), and (4) the Estate of Thomas S. Argue ("Argue Estate"), Defendants removed the matter to federal court on March 7, 2025.[3]

Plaintiffs allege that they were fraudulently induced into contracting for a home remodel with AllHaus Texas, which then engaged in fraudulent billing practices while only partially performing its obligations thereunder. What's more, they allege that those fraudulent practices were carried out through the activities of AllHaus Arizona, which performs similar billing activities for Argue, all of which are mere alter egos of Mr. Argue's multi-state residential construction business.[4]

On March 17, 2025, this action was transferred from the United States District Court for the Northern District of Texas to this Court. *See* Doc. 10. Plaintiffs agreed to the transfer, under the impression that Defendants were acquiescing to the judicial forum in exchange for their preferred venue. *See* Doc. 71 at 21, fn. 9 (citing Doc. 43 at 3).

Defendants' counsel's win-at-all-cost approach was on full display early and drew a stern warning from this Court:

> Taking Defendants' arguments together, Plaintiffs' counsel faced the impossible task of complying with filing deadlines at a time when he was not authorized to file documents before this Court. **Defendants could have assisted Plaintiffs' counsel with this dilemma by offering to request a stay of relevant deadlines and/or clarification from this Court, but Defendants did not do so.** In the future, the parties should confer with the reasonableness and professionalism necessary to more efficiently navigate litigation issues.

Doc. 20 at 2 (emphasis added). These tactics have continued.

On April 7, 2025, Plaintiffs filed their *First Amended Complaint*, which alleged claims against the remaining four (of eight total) defendants: (5) AllHaus, LLC ("AllHaus

---
[2] *See* Declaration of Plaintiff Chance B. McCraw, ¶ 3, attached hereto as **Exhibit A**.
[3] *Id.*, ¶¶ 4-5.
[4] *Id.*, ¶¶ 7-8.

2

Montana"), (6) Dustin Cumming ("Mr. Cumming"), (7) Margaret Ann Argue ("Mrs. Argue"), and (8) the Argue Family Trust dated September 6, 2001 ("Argue Trust").[5]

These parties were added to the lawsuit after an attorney for Defendants represented that AllHaus Texas and Argue did not have any assets.[6] Through public records searches, Plaintiffs discovered that Mr. and Mrs. Argue used Argue to purchase property, transferred the property to their or the Argue Family Trust's names without paying market value, and then sold the property shortly thereafter.[7]

AllHaus Montana ("**AHM**") was only incorporated in late July 2024 (Doc. 24-2 at 8), shortly after Plaintiffs made their last payment to AllHaus Arizona.[8] AHM had no physical address and its sole member, Mr. Cumming—the Argues' son-in-law and former employee of AllHaus Arizona—used the same business mailing address as AllHaus Arizona and Argue.[9] Mr. Cumming was copied on correspondence with AllHaus Texas related to Plaintiffs' Project. These additional parties were named to ensure that the defunct business entities could not avoid satisfying the debts of Mr. Argue, incurred by his alter ego, AllHaus Texas.[10]

Plaintiffs made numerous attempts to settle this matter, beginning with pre-suit notices required by the Residential Construction Liability Act ("RCLA"), Texas Property Code § 27.001, *et seq*., and the Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Comm. Code § 17.01, *et seq*.[11] In response, Plaintiffs were offered vague promises in exchange for complete releases. *See* Doc. 14-2 at 4 (14 of 19 offered repairs qualified by phrase 'where defect is identified' in exchange for full release, including warranty).

---

[5] *Id*., ¶¶ 8-9.
[6] *Id*., ¶ 10.
[7] *Id*.
[8] *Id*., ¶ 11.
[9] *Id*.
[10] *Id*.
[11] *Id*., ¶¶ 12-15.

3

In January 2025, Plaintiffs received correspondence from John Fawaz, an attorney for Mr. Argue, stating that Mr. Argue was the sole owner of AllHaus Texas, that the other entities that Plaintiffs were attempting to communicate with were located in Arizona. Doc. 22-3 at 2. Mr. Fawaz also stated that Argue was insolvent. *Id*.

It is curious, then, that AHM's counsel of record represented to the Court in the affidavit filed with the Motion that Argue is paying AHM's attorneys' fees in this case. *See* Doc. 72-1 at 8-9 (¶ 17). As argued in Section II, *infra*, the fact that AHM is not paying its own fees *detracts significantly* from its argument that the entry of partial judgment is appropriate under Fed. R. Civ. P. 54(b).

To the extent that the Court finds that there is "no just reason for delay," *id*., the Court should deny AHM's fee request. *See* Section III, *infra*. AHM's argument that it is eligible for fees under A.R.S. § 12-341.01 hangs by a thread. The Court has discretion under this precedent to decline to enter an award of fees, based on the *Warner* factors. *See* Section III.C-D, *infra*. Plaintiffs were not anticipating litigation in Arizona. Under the Texas corollary to A.R.S. § 12-341, fees are not recoverable for defending a contract claim. *See* Texas Civil Practices & Remedies Code § 38.001(b) (allowing recovery of fees "in addition to the amount of a valid claim").

Ordering Plaintiffs to pay AHM's attorneys' fees would cause an extreme hardship on Plaintiffs. The couple is expecting their first child soon and have substantial prenatal expenses. Chance McCraw, the primary incomer earner, recently lost his job at the prestigious law firm Jones Day—after Defendants' counsel contacted his employment supervisor about the case.

## II. THE COURT SHOULD DECLINE TO ENTER PARTIAL JUDGMENT.

The Court should not enter judgment for an "ordinary situation," such as this one, and where it could multiply the appeals. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005). "The burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification." *First Amendment Coal. of Ariz., Inc. v.*

*Ryan*, No. CV-14-01447-PHX-NVW, 2016 U.S. Dist. LEXIS 106501, at *4 (D. Ariz. Aug. 10, 2016) (quoting *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993)). Rule 54(b) "was adopted specifically to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Jewel v. NSA*, 810 F.3d 622, 628 (9th Cir. 2015) (internal quotations and brackets removed). "Judgments under Rule 54(b) must be reserved for the unusual case in which *the costs and risks of multiplying* the number of proceedings and of overcrowding the appellate docket *are outbalanced by pressing needs* of the litigants for an early and separate judgment as to some claims or parties." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (emphasis added).

In this context, the Supreme Court has described the district court's role as that of a "dispatcher":

> Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."
>
> Thus, in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals."

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435-38 (1956)) (internal citations omitted).

Here, the only purpose of entering a partial, final judgment in favor of AHM under Rule 54(b) would be to adjudicate its request for attorneys' fees. <u>But AHM is not paying its own attorney's fees</u>—Argue is paying them. Doc. 72-1 at 8, ¶ 17. The pending claims

against Argue have been stayed.[12] There is no "possible injustice" to AHM or Argue, *Jewel*, 810 F.3d at 628, from the delay in entering judgment against which to balance the judicial administrative interest in avoiding piecemeal appeals.

On the other hand, the Court must take into account that the entry of partial judgment—regardless of how AHM's fee request is resolved—may result in an immediate appeal. The appellate court will need to review factual questions pertaining to personal jurisdiction in light of the claim against AHM for unjust enrichment under an alter ego theory—for example, the fact that AHM "pays to use to use the AllHaus trademark, which is held by AllHaus Arizona," Doc. 71 at 6, or that AHM's sole member, "Mr. Cumming regularly visits Arizona," *id*. at 16.

Another appellate court may then need to review these same factual issues in an appeal over the claims against Mr. Cumming under Counts 7, 9, 13, and 14, which have been stayed based on the court's finding of personal jurisdiction over him. *See* Doc. 71 at 29. Yet another appellate court may then also need to review the same factual questions pertaining to personal jurisdiction in any appeal by the Argue Estate or Mrs. Argue, following arbitration of those claims, which are also stayed in this Court.

"[T]his is not a case where the dismissed parties are tangential to the main claims being asserted in the litigation, and thus where immediate appeal of their dismissal may streamline the litigation." *Gonzalez v. United States Human Rights Network*, No. CV-20-00757-PHX-DWL, 2021 U.S. Dist. LEXIS 68750, at *9 (D. Ariz. Apr. 8, 2021). Allowing the entry of judgment will likely multiply proceedings with potentially varying results. Because AHM would suffer no injustice whatsoever by waiting for the entry of judgment,

---

[12] *See* Doc. 71 at 29 ("Because the merits of Counts 7, 9, 13, and 14 against Argue, the Argue Trust, and Mr. Cumming are intertwined with the merits of Plaintiffs' arbitrable claims, in the interest of judicial economy, the Court will stay adjudication of Counts 7, 9, 13, and 14 against Argue, the Argue Trust, and Mr. Cumming, until the completion of mediation and arbitration between Plaintiffs, AllHaus Texas, Mrs. Argue, the Argue Estate, and AllHaus Arizona.").

the balance of equities weighs in favor of denial of the request to enter partial judgment, and the Court should find that there is "just reason for delay" in this case.

## III. THE COURT SHOULD DENY AHM'S REQUEST FOR FEES

To the extent that the Court exercises its discretion in entering partial judgment under Rule 54(b), the Court should deny AHM's request for attorney's fees. Even if the Court finds that AHM is technically eligible for an award of attorney's fees under A.R.S. § 12-341.01, the Court has discretion to decline them. *Mellberg, LLC v. Will*, 639 F. Supp. 3d 926, 934 (D. Ariz. 2022) ("there is no presumption that a successful party should be awarded attorney fees under § 12-341.01"). This is an appropriate result under the circumstances. *See* Section III.B-D, *infra*. Alternatively, AHM argues that—if the Court finds that Texas law applies—it should be awarded attorney's fees under the fee-shifting provision in the contract between Plaintiffs and AllHaus Texas. Doc. 72 at 10. Not so. Plaintiffs will address AHM's alternative argument first. *See* section III.A, *infra*.

### A. AHM cannot recover fees under the AllHaus Texas contract.

After allegedly spending over 160 hours persuading the Court that AHM should *not* be treated as a party, or bound, to the contract between Plaintiffs and AllHaus Texas[13], Defendants' counsel argues that the Court *may* have the authority to award attorney's fees to AHM from Plaintiffs under it. Doc. 72 at 10. The Court should reject this argument.

Initially, AHM is judicially estopped from arguing that it is an intended third-party beneficiary of the Contract, that Plaintiffs made a covenant to AHM by entering the Contract, or that the Contract in any way inures to AHM's benefit. "Judicial estoppel is an equitable doctrine that generally 'prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *United States v. Paulson*, 68 F.4th 528, 563 (9th Cir. 2023) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

---

[13] Doc. 21-1 at 5-27.

Ironically, AHM impliedly argues (incorrectly) in a footnote that judicial estoppel *prevents Plaintiffs* from *denying* the applicability of this section.[14] The distinction is that AHM prevailed in arguing that the Contract did not apply to it; Plaintiffs did not prevail when they argued that it did. Thus, it is not inequitable for Plaintiffs to contest the applicability at this phase of the litigation; whereas, it would be entirely inequitable for AHM to now recover attorney's fees in reliance on it.

Furthermore, AHM's argument fails for textual reasons. The ADR Provision reads, in relevant part:

> This Contract requires mandatory mediation and arbitration of all claims and disputes; if any party commences litigation in violation of this Contract, that party shall reimburse the other parties for all costs and expenses including attorney's fees incurred in seeking abatement of such litigation and enforcement of mediation and/or arbitration.

Doc. 21-1 at 21.

The term "parties" is defined in the Contract as Plaintiffs and AllHaus Texas, Doc. 21-1 at 5 (¶ 1), and the Contract contains a section addressing which other "parties" are bound to it, *id*. at 18 (¶ 16(F)). The Court has found that AHM is not included among them *as a party*. AHM argues that the term "parties" refers to the parties to the litigation, not "the contracting parties," but this is conclusory and not a required interpretation; if a contracting party is not one of the parties to the litigation, then they would have no costs or expenses to be reimbursed. AHM does not provide the Court with any reason to stray from the Contract's clear meaning.

The Court cannot award attorney's fees to AHM and against Plaintiffs on the basis that they "commence[d] litigation *in violation*" of the Contract, because the Court held that the Contract is not applicable to the relationship between them; therefore, Plaintiffs' commencement of the litigation could not have been a "violation" against AHM.

---

[14] Doc. 72 at 10, fn. 3.

Crucially, AHM cannot recover fees incurred "in seeking abatement of such litigation and enforcement of mediation and/or arbitration," Doc. 21-1 at 21, because AHM *did not seek* abatement and enforcement; it sought an *outright dismissal*. AHM claims that "abatement and enforcement *are examples in an inclusive list of the types* of fees Plaintiffs are required to reimburse." Doc. 72 at 10 (emphasis added). This is plainly incorrect. Under that interpretation, the term "all costs and expenses" would not be qualified at all, which either leads to an absurd result or results in an incomplete sentence.

The natural reading is for the phrase "incurred in seeking abatement of such litigation and enforcement of mediation and/or arbitration" as modifying "all costs and expenses," with "attorney's fees" being the only example listed. This is logical, since "attorney's fees" are usually not "costs," and even when a litigant is entitled to both his "attorney's fees and costs," he is still not entitled to all of his "expenses." Thus, the only costs and expenses (including attorney's fees) that may be reimbursed are those incurred in seeking abatement of such litigation and enforcement of mediation and/or arbitration. This reading is also consistent with the use of a semi-colon after the first statement in this paragraph ("This Contract requires mandatory mediation and arbitration of all claims and disputes; if any party commences litigation in violation of this Contract…."), which suggests that the latter result flows from the former purpose statement. AHM is not entitled to attorney's fees under the ADR Provision.

**B.    AHM's eligibility for fees under A.R.S. § 12-341.01 is dubious.**

AHM has cited case law for the premise that it is a "successful" party under A.R.S. § 12-341.01, even though the claims against it were <u>not decided on the merits</u>.

AHM has also cited case law for the premise that courts may award fees under A.R.S. § 12-341.01—a fee-shifting statute regarding contract claims—even where the Court found that there was <u>no contractual relationship between the parties</u>.

"Attorneys' fees are not recoverable, however, if the contract serves only as a factual predicate for the action and not its essential basis." *Chaurasia v. GMC*, 212 Ariz. 18, 26

(Ct. App. 2006) (citing *Cashway Concrete & Materials v. Sanner Contracting Co.*, 158 Ariz. 81, 83 (App. 1988)). "The contract must have some causal connection with the claim to justify an award of attorneys' fees." *Chaurasia*, 212 Ariz. at 26; *see also Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F.3d 832, 836 (9th Cir. 2001) ("where a contract is merely somewhere within the factual background, an award of fees under § 12-341.01(A) is not proper").

The Motion argues that "[t]here could never be liability without allegations of a breach of the Contract" as Plaintiffs' "hook" for personal jurisdiction was "alter ego." Doc. 72 at 8. But the genesis of Plaintiffs' injury was not the breach of a contract—it was the fraudulent inducement to contract with AllHaus Texas in the first place (i.e., intentionally misrepresenting the cost of construction to induce Plaintiffs to sign the 2022 contract and make deposits). In other words, Plaintiffs' fraud claims are not limited to issues that arose from the performance of the contract; the contract itself was a product of an initial fraud.

Finally, awards under the statute are limited to "the amount paid or agreed to be paid." A.R.S. § 12-341.01(B). The purpose is to "mitigate the burden of the expense of the litigation…" *Id*. Yet, AHM has not actually "paid" any of the attorney's fees that the Motion is seeking to recover—and it hardly "agreed" to pay attorney's fees—as Argue has indemnified AHM for, and is paying, all of its attorney's fees in this case.

AHM's attorney-client agreement is dated December 15, 2025. Doc. 72-1 at 19-30. Defendants' counsel's affidavit states that this fee agreement "confirms the original oral fee agreement that was initially in place." Doc. 72-1 at 3 (¶ 6). Defendants' counsel's affidavit continues: "AllHaus Custom Homes Incorporated[15] is indemnifying AllHaus Montana for AllHaus Montana's legal fees and pays for its legal fees." *Id*. This representation is repeated with respect to Argue. *Id*. at 8-9 (¶ 17).

---

[15] Plaintiffs are not familiar with an entity named "AllHaus Custom Homes Incorporated" and assume this is a typographical error, meant to refers to Argue Custom Homes, Inc.

**C.  An award of fees under A.R.S. § 12-341.01 is discretionary.**

An award of attorney's fees under A.R.S. § 12-341.01 is **not** mandatory and the Court should exercise its discretion to deny the request. *See Cheval Farm, LLC v. Chalon*, No. CV-11-00043-TUC-JGZ, 2013 U.S. Dist. LEXIS 191163, at *5 (D. Ariz. Aug. 21, 2013) ("The Court acknowledges that an award of fees pursuant to A.R.S. § 12-341.01(A) is discretionary."); *Mellberg*, 639 F. Supp. 3d at 934 ("there is no presumption that a successful party should be awarded attorney fees under § 12-341.01"). "The trial judge …has broad discretion in fixing the amount of the fee provided that 'such award may not exceed the amount paid or agreed to be paid.'" *Design Trend Int'l Interiors, Ltd. v. Cathay Enters.*, 103 F. Supp. 3d 1051, 1063-64 (D. Ariz. 2015) (quoting *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985)).

**D.  The *Warner* factors weigh heavily against an award of fees.**

"Mere eligibility does not establish entitlement to fees." *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985). The Arizona Supreme Court has identified "several factors which...are useful to assist the trial judge in determining whether attorney's fees should be granted under the statute," which include:

1. The "merits of the claim or defense presented by the unsuccessful party;"

2. Whether "[t]he litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result;"

3. Whether "[a]ssessing fees against the unsuccessful party would cause an extreme hardship;"

4. whether the "successful party did not prevail with respect to all of the relief sought;"

5. "the novelty of the legal question presented" and/or "whether such claim or defense had previously been adjudicated in this jurisdiction;" and

6. "[W]hether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." (hereinafter, the "*Warner* **factors**").

*Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985).

### 1. Merits of Plaintiffs' Personal Jurisdiction Arguments.

AHM's motion incorrectly states that the first of these factors is whether "the successful parties' defense was meritorious." Doc. 72 at 8. The focus here is on whether the <u>un</u>successful party's position (though ultimately not availing) had merit to it.[16] On this point, the answer is an emphatic "yes." While they did not tilt the scale, there were numerous facts, taken together, that might have led to a finding of personal jurisdiction.

AHM licenses the use of the "AllHaus" trade name, which appears to be used only in two other states, and whose goodwill flows almost entirely from the State of Arizona, from which the Argues' family-run construction business operates. Doc. 58-1 ¶ 19. The Argue family's son-in-law, AHM's only member, Mr. Cumming, is subject to jurisdiction in this Court, Doc. 71 at 16, including for AHM business related reasons. Doc. 25 at 9. All other known employees of AHM, COO and head of marketing, work from the AllHaus Arizona headquarters. Doc. 63 at 7, 11-12 (citing evidence). AHM's accounting work is handled by an Argue-family entity located in Arizona. Doc. 24-2 ¶ 24.

### 2. Whether litigation could have been avoided or settled, and the successful party's efforts were completely superfluous in achieving the result.

This specific factor weighs <u>heavily</u> in Plaintiffs' favor here, because litigation could have been avoided, could have been settled, and it is *still* ongoing. Moreover, AHM has not prevailed on the merits of Plaintiffs' claims. All it has obtained is a ruling that Plaintiffs' claims against it need to be re-filed. The Court found that it has personal jurisdiction over AHM's sole member, Mr. Cumming, to whom AHM's fee agreement is addressed. The claims against him are still pending before the Court.

The Court should also consider this factor, and others, from the perspective of Plaintiffs' position relative to all Defendants. Defendants are all represented by the same counsel. The fees that "AHM" is trying to recover are the expenditures of Argue—

---

[16] The Court should therefore disregard the first bullet point of the Motion, which discusses AHM's defenses, rather than Plaintiffs' personal jurisdiction arguments. Doc. 72 at 9.

admittedly. Doc. 72-1 at 8, ¶ 17. According to Argue's attorney, Argue has no assets and owes millions to creditors, Doc. 22-3, suggesting that one or more of the other defendants are funding Argue, so that it may pay its attorneys (rather than finish projects, repair bad work, and make right with overbilled and misled customers) to defend AHM and Mr. Cumming, while he carries on the operations of the Argue family's construction business using the backend operations of AllHaus Arizona.

The only purpose these fees have served has been to exhaust Plaintiffs in their legitimate effort to obtain an adjudication over the merits of their claims and recover damages from whoever possesses the Argue empire's ill-gotten gains. This dispute could have been settled at numerous points. Plaintiffs have tried to settle. Defendants have not.

In November 2024, after weeks of informal attempts at dispute resolution, Plaintiffs sent pre-suit notice of construction defects and deceptive trade practices under the RCLA and DTPA, respectively.[17] In response, AllHaus Texas sent an offer of settlement which proposed to make repairs, nearly all of which were qualified by the phrase "where defect is identified." Doc. 14-2 at 4. Under the RCLA, which requires an offer to "describe in reasonable detail the kind of repairs that will be made," Tex. Prop. Code § 27.004(b), using this type of language is tantamount to making no offer at all. *See F&S Constr., Inc. v. Saidi*, 131 S.W.3d 94, 99 (Tex. App. 2003) ("The record indicates that [the contractor] never made such a settlement offer to the [homeowners] other than to say that it wanted to complete its work on the house").

Furthermore, the offer was contingent upon a waiver of all claims, "including the continuing warranty." Doc. 14-2 at 4. At least one appellate court in Texas has found that such a condition supports a jury finding that the contractor's offer was unreasonable under the RCLA. *See Perry Homes v. Alwattari*, 33 S.W.3d 376, 383 (Tex. App. 2000). In December 2024, Plaintiffs sent a second RCLA notice with additional evidence, but they

---

[17] Exhibit A, ¶¶ 12-14; *see also* Doc. 14-1.

did not receive a response to this communication.[18] Plaintiffs made additional attempts to settle after commencing this litigation, including before filing the amended complaint which brought AHM into this case.[19]

### 3. Whether assessing fees would cause an extreme hardship.

Entering judgment against Plaintiffs for $82,000 in attorney's fees—based on their attempt to hold account those who have *already left* them in financial ruins—would be an extreme hardship to Plaintiffs personally and add insult to injury. Defense counsel's bare-knuckle tactics have already caused Plaintiff Chance McCraw's loss of employment at a prestigious law firm, where he earned a high-paying salary.[20] Plaintiffs have hired outside counsel to prevent Defendants contacting their employers in order to protect themselves.

Plaintiffs no longer have income to cover their expenses, but they are now paying over $2,000 per month toward the loan that they obtained for the incomplete and defective construction work performed by the Texas arm of AllHaus, which fraudulently induced Plaintiffs into contracting with it.[21] Plaintiffs faced tremendous costs to complete the Project, in addition to the upcoming costs of paying arbitrators, experts, and attorneys to prosecute their claims. In addition, Plaintiffs are expecting the birth of their first child and have additional expenses of a gestational carrier.[22] Entering partial judgment, especially at this point in the litigation, would cause an extreme hardship on them.

### 4. Whether the successful party did not prevail with respect to all of the relief sought.

As noted above, Plaintiff's claims against AHM's sole member, Mr. Cumming, are still pending before the Court. The Motion attaches a fee agreement addressed to Mr. Cumming and AHM, and the GT time entries submitted appear to, at least in part, relate to

---

[18] Exhibit A, ¶ 15.
[19] *Id*., ¶¶ 17-20.
[20] *Id*., ¶¶ 21-22.
[21] Exhibit A, ¶ 23-26.
[22] *Id*., ¶¶ 27-28.

work performed on behalf of Mr. Cumming.[23]  It also bears repeating that AHM did not prevail on the merits in this litigation.

### 5. Novelty of the legal question.

The Motion is ambivalent over whether the issues were novel. *See* Doc. 72 at 9 ("While the issues on general and specific personal jurisdiction were more common, the alter ego theory required close scrutiny."). Plaintiffs' position is that this factor does not weigh heavily in either party's favor.

### 6. Whether assessing fees would discourage the filing of tenable claims for fear of having to pay a large sum of attorney's fees.

Awarding fees to AHM would discourage other homeowners from pursuing tenable claims against contractors (and the various short-lived legal entities that they are known to establish from time to time) for fear that they will be held liable for a large amount of attorney's fees. Plaintiffs never contemplated when they initiated this action (the merits of which this Court has made no determination) that an Arizona fee-shifting statute might govern the outcome of an attorney's fee dispute. The result would be chilling.

Moreover, it would further embolden contractors to use scorched-earth litigation tactics as a sword against consumers who have been damaged by their faulty work, broken promises, and their outright misrepresentations. It is enough that consumers are faced with 'gotcha' language of adhesion contracts, entered into without any real negotiation, due to the disparate bargaining power between the individual and construction firm.

## IV. MOVANT'S FEE REQUEST IS UNREASONABLE AND EXCESSIVE.

To the extent that the Court awards AHM any attorney's fees, the amount should be greatly reduced. "In determining a reasonable attorneys' fee, the Court must begin with the 'lodestar' figure which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1245 (D. Ariz. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In

---

[23] *Id.,* ¶ 30.

determining the reasonableness of the number of hours spent, courts look to the novelty of the issues, the skill and experience of counsel, the quality of representation, and the results obtained. *Id*. "[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended," and the number of hours "may be reduced" "where documentation…is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1245 (D. Ariz. 2014) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

### A. Unreasonable Amount of Time

Plaintiffs object to the time entries on several grounds.[24] First, time entries #1, 2, 9, 21, 24, 26, 27, 29-31, 37-39, 41, 43, 46, and 58-87 (excluding 72 and 82) describe work performed for multiple defendants or defendants other than AHM.[25] Second, time entries #6, 32 and 35 describe work not related to AHM's motion and should not be recovered.[26] Third, time entries #13, 45, 47-55, 77, and 84 describe work performed that was not used in the litigation and should not be recovered. Other entries are too vague to be awarded.[27]

Broadly speaking, the amount of time spent on particular work products is excessive. GT claims to have staffed at least six attorneys to work on matters pertaining to AHM alone. Attorney Nicholas Johnson billed 17.2 hours on 6/3/2025.[28] The same day, Louis Lopez billed 7.2 hours.[29] The previous day, Mr. Johnson billed 9.2 hours, and the following day he billed 10.2 hours.[30]

In total, AHM is seeking $17,795 (34.4 hours) for its 12-page motion to dismiss and nearly twice as much, $29,745 in attorney's fees (61.7 hours), for its 10.5-page reply. By

---

[24] *See* Exhibit A, ¶¶ 29-35; **Exhibit B** (itemized objections), attached hereto.
[25] Exhibit A, ¶ 30.
[26] *Id*., ¶ 32.
[27] *Id*., ¶ 33.
[28] *See* Exhibit B at 2 (lines #29-32)
[29] *Id*. (line 28)
[30] *Id*. (lines 25-27 and 33-43).

contrast, Plaintiffs' counsel spent 19.5 hours drafting the 17-page response.[31] Furthermore, AHM is seeking $21,620 based on 46.4 hours for its response to Plaintiffs' motion for alter ego and jurisdictional discovery. Plaintiffs' counsel spent 12.4 hours drafting the motion.[32] The requested amounts are excessive. *See Randolph v. II LLC*, No. CV-21-00713-PHX-SRB, 2022 U.S. Dist. LEXIS 86191, at *10 (D. Ariz. Apr. 6, 2022) ("find[ing] that GT billed more time than reasonable in litigating [a] fee award" where it spent "72 hours for the preparation of the instant Motion and Reply").

### B. Unreasonable Hourly Rate

Plaintiffs object to the hourly rates charged by GT for some of its attorneys. Time entries #5, 16, and 28 describe work performed by a partner at $650 per hour, which could have been performed by an associate at a lower hourly rate.[33] Plaintiffs also object to the hourly rate of $725 for Utah associate Kyra Woods, which exceeds that of the partner handling the litigation. AHM claims that Ms. Woods' "contributions were reasonably necessary to adequately address Plaintiffs' pending motions," Doc. 72-1 at ¶ 8, but it does not explain how or why. This justifies a reduction. *See Randolph*, 2022 U.S. Dist. LEXIS 86191, at *11 (declaration failed to explain why "GT shareholder in the New York office billing at a $945/hour rate, was working on the instant case with Arizona lawyers").

## V. CONCLUSION

The Court should deny the Motion. The case does not present circumstances that justify entering partial judgment under Rule 54(b). If any partial judgment is entered, it should be to deny AHM's request for attorney's fees. Even this would risk multiple proceedings and piecemeal appeals. To the extent that the Court orders Plaintiffs to pay AHM any fees at all, the amount should be significantly reduced.

---

[31] Exhibit A, ¶ 34.
[32] *Id.*, ¶ 35.
[33] *Id.*, ¶ 31.

Respectfully submitted on this 23rd day of January, 2026.

**LOVEIN | RIBMAN, P.C.**

By: */s/ David N. McDevitt*
David N. McDevitt
AZ Bar No. 030761
TX Bar No. 24117433
dmcdevitt@loveinribman.com
1225 Main Street, Suite 200
Grapevine, Texas 76051
(817) 442-5106 (Telephone)
(817) 442-5108 (Facsimile)
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on January 23, 2026, I electronically filed the foregoing document with the clerk of the U.S. District Court of Arizona, using the electronic case filing system of the court, which will send notification of such filing to all counsel of record.

s/ *David N. McDevitt*
David N. McDevitt