Exhibit A

David N. McDevitt (030761)
LOVEIN | RIBMAN, P.C.
1225 Main Street, Suite 200
Grapevine, Texas 76051
(817) 442-5106 (Telephone)
(817) 442-5108 (Facsimile)
dmcdevitt@loveinribman.com
ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| Anthony McCraw and Chance McCraw, <br><br> Plaintiffs, <br><br> v. <br><br> Argue Custom Homes, Inc.; AllHaus Texas, LLC; HomeWorks Property Management LLC d/b/a AllHaus; the Estate of Thomas S. Argue; Margaret Ann Argue; The Argue Family Trust dated September 6, 2001; AllHaus, LLC; and Dustin Cumming; <br><br> Defendants. | Case No.: 25-CV-154-TUC-RM <br><br> **DECLARATION OF PLAINTIFF CHANCE B. MCCRAW** <br><br> **DISTRICT JUDGE ROSEMARY MARQUEZ** |

I, Chance B. McCraw, declare as follows:

1. I am one of the named Plaintiffs in the above-captioned action. I am over 18 years of age, of sound mind, and capable of making this Declaration. I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' response in opposition to *Defendant AllHaus, LLC's Motion for Entry of Partial Judgment and Leave to File Application for Attorneys' Fees*, filed on December 16, 2025 (the "Motion").

3.    This case was initiated in 68th District Court for Dallas County, Texas on February 3, 2025. *See* Doc. 1-1 at 4 (docket sheet with filing date and cause number).

4.    On March 7, 2025, Defendants removed the case to the United States District Court for the Northern District of Texas. *See* Doc. 1.

5.    The case was originally filed against Argue Custom Homes, Inc. ("Argue"), AllHaus Texas, LLC ("AllHaus Texas"), HomeWorks Property Management LLC d/b/a AllHaus ("AllHaus Arizona"), and the Estate of Thomas S. Argue ("Argue Estate"). *Id.*

6.    Plaintiffs alleged that they were fraudulently induced into contracting for a home remodel with AllHaus Texas, which then engaged in fraudulent billing practices while only partially performing its obligations thereunder. *See* Doc. 1-1 at 13, ¶¶ 18-19, 22, 26.

7.    Plaintiffs further alleged that those fraudulent practices were carried out through the activities of AllHaus Arizona, which performs similar billing activities for Argue, all of which are mere alter egos of Mr. Argue's multi-state residential construction business. *Id.* ¶¶ 21-24, 27-29.

8.    On March 17, 2025, the United States District Court for the Northern District of Texas transferred this case to this Court. *See* Doc. 10.

9.    On April 7, 2025, I filed Plaintiffs' First Amended Complaint, which alleged claims against additional defendants: AllHaus, LLC ("AllHaus Montana"), Dustin Cumming ("Mr. Cumming"), Margaret Ann Argue ("Mrs. Argue"), and the Argue Family Trust dated September 6, 2001 ("Argue Trust"). *See* Doc. 14.

10.   These defendants were added to the lawsuit after counsel for Defendants represented that AllHaus Texas and Argue did not have any assets. I discovered through public records searches that Mr. and Mrs. Argue used Argue to purchase property, transferred the property to their or the Argue Family Trust's names without paying market value, and then sold the property shortly thereafter.

11.   I further discovered that AllHaus Montana was formed shortly after Plaintiffs' last payment to AllHaus Arizona, had no physical address, and its sole member, Mr. Cumming, used the same business mailing address as AllHaus Arizona and Argue. Mr.

Cumming is the son-in-law of Mr. and Mrs. Argue and has been employed with AllHaus Arizona since 2023. He also was on correspondence regarding invoices for the Project from as early as February 2024 and responded to my email with the October 21, 2024 demand letter on behalf of AllHaus Texas and Argue. These Defendants were named to ensure that the defunct business entities could not avoid satisfying the debts of Mr. Argue, incurred by his alter ego, AllHaus Texas.

12. Prior to initiating litigation in Dallas County District Court, I made multiple concerted efforts to resolve this matter. I sent a demand letter to AllHaus Texas and Argue on October 21, 2024, outlining Plaintiffs' claims. AllHaus Texas and Argue responded on October 25, 2024, demanding that Plaintiffs send a formal notice under the RCLA or, in the alternative, offering to settle for a $10,000 deduction from AllHaus Texas's last bill with a full release for AllHaus Arizona, AllHaus Texas, and Argue.

13. I discussed settling this matter with counsel for Defendants via a phone call on November 1, 2024, but the parties did not reach an agreement because Defendants continued to demand payment, despite stating that Defendants were trying to process a refund owed to Plaintiffs. Defendants never processed this refund.

14. Plaintiffs did not owe AllHaus Texas any money, so I sent an RCLA and DTPA notice on November 4, 2024. Doc. 14-1. Defendants rejected the settlement offer in the November 4, 2024 notice letter and offered the same $10,000 deduction from AllHaus Texas's last bill in its December 31, 2024 response letter. Doc. 14-2. I called and emailed counsel for Defendants to get clarity on their settlement offer, but counsel for Defendants would not respond to my phone calls or emails. Plaintiffs rejected Defendants' settlement offer on February 1, 2025, in part because of the inability to gain clarity on the offer.

15. I also sent AllHaus Texas a second RCLA notice on December 20, 2024, providing additional evidence and details of Plaintiffs' claims. AllHaus Texas, despite receiving the notice, never responded to the notice.

16. After learning of Mr. Argue's passing, counsel for Defendants put me in contact with the then-representative of the estate, John Fawaz. I emailed him to discuss

settlement of the claims Plaintiffs had against the estate. Mr. Fawaz was not willing to discuss settlement and stated that Mr. Cumming "will not be entertaining any settlement offers" and he "instructed his counsel to pursue this matter to its conclusion, at which point he will ask the court to award legal fees and court costs." Dkt. 22-3. Based on these interactions, I understood that Defendants were not interested in settlement.

17. I also attempted to settle this matter before filing Plaintiffs' First Amended Complaint. I attended a call with counsel for Defendants on March 4, 2025, where I tried to discuss settlement with Defendants. Counsel for Defendants stated that he would provide verified financial statements for the defunct business entities, but he reneged on that offer on March 9, 2025. I again tried to discuss settlement during the parties' March 21, 2025 Rule 26(f) conference but Defendants maintained the position that settlement discussions were premature.

18. None of the Defendants have given or responded to Plaintiffs' multiple settlement offers since AllHaus Texas, LLC's December 31, 2024 settlement offer, Dkt. 14-2. Defendants never responded to Plaintiffs' response to AllHaus Texas, LLC's December 31, 2024 settlement offer, Dkt. 14-3, or Plaintiffs' second RCLA Notice Letter dated December 20, 2024, Dkt. 14-4. AllHaus Montana has never provided a settlement offer to Plaintiffs. Defendants have refused to seriously engage in settlement discussions.

19. I have reached out to counsel for Defendants via email on November 5, 2024, January 9, 2025, and July 14, 2025, to discuss settlement. Plaintiffs provided a specific settlement offer for AllHaus Texas, LLC in the July 14, 2025 correspondence. Defendants did not respond to my requests to discuss settlement and did not respond to state whether Defendants accepted or rejected Plaintiffs' settlement offer before the offer deadline.

20. I again raised the possibility of settlement with counsel for Defendants during the Parties' conference for the Motion. I, as the then-counsel for Plaintiffs, attended the Parties' conference to discuss the Motion. On that call, counsel for Defendants did not mention that he intended to move for a partial entry of judgment, a necessary precursor to seeking attorney's fees. Additionally, at the end of the call to discuss the Motion I asked if

Defendants would like to discuss settlement. Counsel for Defendants agreed to discuss settlement. The settlement discussions lasted over five minutes. I walked through each of Plaintiffs' categories of damages and provided the calculations or amounts for each category. Counsel for Defendants then asked for Plaintiffs' settlement number. I provided a settlement number. *See generally* Dkt. 72 at 2 (noting Plaintiffs' approximate settlement offer). Defendants' counsel stated he would provide this settlement offer to his client. Defendants never responded to Plaintiffs' settlement offer.

21. Plaintiffs could not pay an award of attorneys' fees. As noted in Defendant's Motion, Dkt. 72 at 9, I am a former employee of the law firm Jones Day. As of October 27, 2025, I am no longer employed there and am actively seeking employment. I was the primary income earner for my family prior to my separation from Jones Day.

22. Beginning on October 15, 2025, Defendants, through their counsel, emailed the partner-in-charge of the Dallas office of Jones Day where I worked seeking to draw Jones Day into this case. I, as well as the partner-in-charge of Jones Day's Dallas office, told counsel for Defendants that Jones Day was not involved in this case and I was representing my husband and myself. On October 24, 2025, counsel for Defendants threatened to send Jones Day a letter outlining its alleged involvement in this case. To my knowledge, counsel for Defendants did not send the threatened letter. Nevertheless, Jones Day terminated my employment on October 27, 2025. Within days of my termination, Defendants asked Plaintiffs to provide a settlement offer.

23. Plaintiffs have $22,922.52 in savings to cover their expenses over the next couple of months while Plaintiff Chance McCraw seeks employment. Plaintiffs estimate that these savings could last up to two months.

24. Plaintiffs no longer have enough income to cover their expenses. Plaintiff Anthony McCraw remains employed and he receives $5,719.80 per month from his employer, less taxes and insurance. However, Anthony McCraw has stopped contributing to his 401(k)-retirement plan since Chance McCraw lost his employment. Chance McCraw is no longer contributing to his retirement plan because he is unemployed.

25. Plaintiffs' expenses include mortgages, insurance, utility bills, a car loan, and everyday living expenses. Last month Plaintiffs' mortgages, insurance, and utility bills totaled $9,730.79. This is a reasonable estimate of Plaintiffs' monthly expenses, less the everyday living expenses, such as groceries and incidentals.

26. Plaintiffs continue to pay a loan for the work partially performed by Defendant AllHaus Texas, LLC and the new contractor that Plaintiffs hired to complete the Project. The monthly payment for this loan is $2,052.16.

27. As a result of Defendants' actions that caused Plaintiff Chance McCraw to lose his job, Plaintiffs have hired counsel to litigate this matter for them. This has created an additional expense for Plaintiffs that is not currently estimable. Plaintiffs have incurred $15,250 in attorney's fees since retaining the law firm Lovein Ribman. Plaintiffs will incur additional expenses each month due to the need to hire outside counsel to allow Plaintiff Chance McCraw to find employment and hopefully avoid any future interference with his employment.

28. Plaintiffs are also currently expecting the birth of their first child. They have additional expenses that they must cover for the successful delivery of their child and to cover expenses incurred by the gestational carrier ("GC"). Insurance for the GC is $745.47 per month. The GC also has other expenses for doctor's visits, medication, and reimbursements that totaled $4,673.88 last month. These expenses will increase over the next several months and until delivery based on the structure of the parties' agreement.

29. I prepared the spreadsheet attached to Plaintiffs' response as Exhibit B, which outlines objections to the fees requested by AllHaus Montana. I have colored coded entries to categorize the objections and then written a remark describing the type of objection made.

30. Entries in the rust orange font describe work performed for multiple Defendants or Defendants other than AllHaus Montana. These time entries do not comply with LRCiv 54.2 because they do not segregate work performed for each Defendant. For example, the first two entries do not refer to AllHaus Montana. Other entries, such as those on 5/13, 6/2 (multiple entries), 6/4 (multiple entries), 6/12, do not include what was

discussed on a call or in an email, as required by LRCiv 54.2(e). Other entries, such as the entries on 10/8 and 10/9 refer to work performed for Defendant Mr. Cumming, not AllHaus Montana.

31. Entries in green font describe work that should have been performed at the associate level, so the entries are excessive. Entries on 5/13, 5/14, and 6/3 contain entries for basic legal research that should have been performed at the associate level. Based on my experience, a client would not pay for a partner to perform these sorts of tasks.

32. Entries in red font describe work not relevant to the Court's adjudication of the motion and are therefore not recoverable. The entry on 5/13 describes work performed for AllHaus Montana's motion to dismiss that was not relevant to any jurisdictional arguments. Time entries on 6/3 and 6/4 describe work performed for sections of AllHaus Montana's reply that were not relevant to the Court's adjudication of the motion. *See* Doc. 71 (not addressing these arguments).

33. Entries in purple font describe work never used by AllHaus Montana in this case. For example, the time entry on 5/13 describes drafting an answer that was never filed. Time entries 6/12 through 7/16, totaling 20.7 hours and $11,753, describe work performed for a sur-response that AllHaus Montana never filed because the Court denied AllHaus Montana's request to file a sur-response. Doc. 44. The time entry on 10/14 references a "demand from Texas counsel." Plaintiffs did not send a demand that day. The term "Texas counsel" is vague and does not comply with LRCiv 54.2(e)(2). This likely refers to Rod Khavari, counsel for AllHaus Texas in a similar case pending in Dallas, Texas. This time entry is not for this case.

34. In my experience, the request for fees is unreasonable in the amount of time spent drafting a motion and responding to another. AllHaus Montana requests fees for 34.4 hours of legal work totaling $17,795.00 for drafting a 12-page motion to dismiss. AllHaus Montana then spent 61.7 hours totaling $29,745.00 on its 10.5-page reply to its motion to dismiss. In contrast, I spent 19.5 hours drafting a 17-page response.

35. AllHaus Montana's request for fees regarding its response to the motion for jurisdictional and alter ego discovery is also unreasonable. AllHaus Montana requests fees for 46.4 hours totaling $21,620.00. By contrast, I spent 12.4 hours drafting the motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 23 day of January, 2026.

*Chance B. McCraw*
Chance B. McCraw